No. 55709.—Balfour, Guthrie & Co., Ltd. v. United States, petition 6741–R. (Philadelphia).

LAWRENCE, Judge: Petitioner herein seeks the remission of additional duties assessed pursuant to the provisions of section 489 of the Tariff Act of 1930 (19 U. S. C. § 1489) on certain boiled cottonseed soap stock imported from Argentina which was entered at a less value than that found by the appraiser on final appraisement.

The record before us includes the testimony of two witnesses on behalf of the petitioner and that of one witness for the respondent.

Henry G. Perry, assistant vice president in charge of oils, fats, and kindred lines of Balfour, Guthrie & Co., Ltd., was the first witness to testify for the petitioner. He stated that he has charge of purchases and contracted for the purchase of the importation involved herein. Explaining the practice in his department, he stated that as soon as a purchase is made in a foreign country, a series of forms is prepared, five in number, which gives the complete details of each purchase. Copies of said forms are distributed to the traffic department, the invoice department, and to the control department so that the transaction could be followed through by the three different departments so as to avoid any errors. The forms referred to would also serve as a source of information to the import department so that from the time the purchase was made until the goods arrived in the United States fluctuations in value could be noted. The witness testified further that he received quotations several times a week either by telephone from Buenos Aires or from the New York offices of American producers in Argentina. Due to his close contact with the Argentine market, he had on frequent occasions complied with the requests of customs officials for lists of current prices. This was particularly true in 1941, 1942, and 1943 when the Customs Information Exchange had difficulty in getting accurate values from Brazil and Argentina and inasmuch as he traveled in those countries he could often get this information for it.

Mr. Perry testified that he had passed along what information he had as to price to Mr. Crosby, traffic manager of the petitioner, and that insofar as his connection with the entry was concerned, he was then finished and the matter was handled by the traffic department. He stated that he did not recall seeing any notice of withheld appraisement, the significance of a withheld appraisement notice being that the appraiser was not satisfied with the prices that had been submitted on the entry papers and that he was awaiting further information regarding the prices. The witness could not say whether his office made any attempt to amend the entry involved after receiving the notices of withheld appraisement because he did not handle the traffic end of the business. He testified further that at the time of entry of the present importation, his office had lost quite a number of men to the American and Canadian armed forces; that there was a changeover from male help to female help; and that the traffic and import departments were quite badly disorganized because of shifting help.

The second witness for petitioner was Ernest H. Crosby, presently export traffic manager of Balfour, Guthrie & Co., Ltd., who at the time of the importation in controversy had charge of a portion of the import traffic department. He stated that on all purchases he received a copy of the contract of purchase, which he kept on file for the purpose of making entry. He was unable to find that he personally transmitted the documents to J. W. Hampton, Jr. & Co., customhouse broker, for making entry, and that he could not find in the files any direction to the customhouse broker as to what price to use in entering the merchandise. The records of 1941 are not in existence today, the general practice being to store correspondence for 7 years and then to destroy it. As to documents re-

lating to pending matters, he stated, the only explanation as to their destruction is attributed to changing personnel. It was the witness' belief that the consular invoice was sent along without any instructions to J. W. Hampton, Jr. & Co., its broker for a number of years, and that if contracts in his office showed a higher price, he would have advised the broker as to the subsequent purchases. From February to July of 1941, the witness stated that petitioner had somewhere between 40 and 50 entries at the ports of Boston, New York, New Orleans, and Philadelphia, and that the appraisements at the other ports in some cases resulted in advances in the entered value. As to why there was no attempt to amend the entry in the instant case, the witness stated that "it was simply carelessness on the part of myself and my staff, due to the press of other business and the confusion in reorganization." He testified further that he did not knowingly withhold any information from the appraiser as regards this particular entry, and that he did not have any intention to deceive the appraiser as to the value of the merchandise or to defraud the revenue of the United States.

Cross-examination of this witness developed the testimony that he had given instructions as to the manner of entry and as to the price, but there may have been carelessness on the part of some of his staff in transmitting the information. At the time of entry in June 1941, he had in his possession information regarding purchases of similar merchandise at higher prices but that he did not attempt to amend the entry in this case. He stated that he did not know what the foreign value was and that the only value he had access to was the value of subsequent purchases shown on the sales records.

A communication dated June 17, 1941, addressed by Balfour, Guthrie & Co., Ltd., to the United States appraiser at New York, evidently in answer to a telephone request, was admitted in evidence as defendant's exhibit 1. This communication contains a listing of purchases made by the petitioner herein for the period from March 31 to May 29, 1941, which was immediately prior to the entry of the importation in issue on June 5, 1941. From said exhibit 1, it appears that the purchase price of Argentine boiled-down cottonseed soap stock was experiencing generally a rapidly rising trend.

Counsel for the parties herein orally stipulated that at the time of the entry in question Mr. Howard Wilson and Mr. Hafer were partners in J. W. Hampton, Jr. & Co., Philadelphia; that both of these gentlemen took part in the entry and that Mr. Hafer signed it; that Mr. Wilson has since died and Mr. Hafer was ill and could not appear to testify. It was further stipulated by the parties that if Mr. Hafer or Mr. Wilson were present, they would testify in substance that they made the entry on the basis of the price stated in the consular invoice in the absence of any other information from Balfour, Guthrie & Co., Ltd., in New York. Also, it was agreed that they would state that neither of them knew of any higher value and that both would testify that they did not withhold any information from the appraiser; that they did not intend to deceive the appraiser as to value; and that they did not intend to defraud the revenue of the United States or to misrepresent the facts in the case.

Clarence K. Young, customs examiner at the port of Philadelphia for 15 years, who passed upon the involved merchandise, testified as the only witness for the respondent. From his testimony it was shown that he rendered an advisory report to the appraiser at Philadelphia advancing the values over those reported on the entry; that he contacted the Customs Information Exchange in New York which furnished him with the information contained in defendant's exhibit 1; that the appraiser's office issued notices of withheld appraisement showing the additional value, the originals of which notices were sent to the Hampton company the customhouse broker; that such a notice is not "a notice to him [importer]

to amend but he can use it as a means of arriving at amending." In the belief that there might be a higher foreign value for such or similar merchandise, a foreign investigation was instigated in Argentina. When the final report of the investigation was received, a long delay was encountered in obtaining a conversion rate for the Argentine peso before final appraisement was made..

Counsel for the parties then stipulated "that if the Appraiser were here in Court today, he would accept the return as made by Mr. Young."

On cross-examination, the witness stated that prior to the present importation, he had sought information from the petitioner herein with regard to various entries and that the petitioner had always given the requested information.

In arriving at a conclusion in the controversy before us, there are various facets of the case which require our consideration.

The petitioner's witnesses candidly stated that entry of the present importation at a less value than that found on final appraisement can be explained only on the basis of carelessness and a lack of diligence. But such grounds, standing alone, are not sufficient to ·justify the court in deciding whether there should be a remission of additional duties. *United States* v. *Fish,* 268 U. S. 607, 612. In that case, the Supreme Court stated, *inter alia*—

\* \* \* The issue to be found by the Board [now the United States Customs Court] was whether the importer showed by his evidence that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. \* \* \*

See also *Linen Thread Co.* v. *United States,* 13 Ct. Cust. Appls. 395, T. D. 41322.

The evidence presented by petitioner herein is not only lacking in any showing of intention to defraud, conceal, misrepresent, or deceive, but contains affirmative proof of its good faith.

The writer of this opinion heard all of the testimony in this case, was confronted by the witnesses, and was favorably impressed by their demeanor, intelligence, and veracity.

The petitioner, a concern experienced in the importing trade, had organized its office procedure in such a manner as to eliminate, so far as humanly possible, the opportunity for error due to lack of information of current market conditions on the part of its personnel engaged in import matters. The record discloses, moreover, that the importer herein was so well informed with regard to sales conditions in the Argentine market through telephone communication, frequent correspondence, and personal visits, that the customs officials at several ports in the United States had solicited and received from it information thereon on several occasions. A concrete example is before us in the present case in the form of defendant's exhibit 1, which rather than creating doubt as to the good faith of the petitioner is convincing corroboration of the testimony of both petitioner's and respondent's witnesses that the petitioner cooperated with the customs officials in supplying information about the Argentine market.

With regard to the particular importations in controversy, the record discloses that petitioner at the time of entry was in possession of information which reflected values higher than those shown on the entry. In accordance with the established practice and procedure, entry at such higher values would have been made. However, the then-prevailing war condition with its concomitant circumstances of shifting personnel and inexperienced help resulted in failure, in the present instance, to communicate to the customs·broker the proper entry value. This circumstance, however, we are convinced, was predicated on carelessness rather than on bad faith on the part of the importer in designedly withholding information from the appraiser.

There is testimony in the record to the effect that at the time of entry neither the importer nor the customs broker had any intention to withhold information from the appraiser, or any intention to deceive the appraiser as to the value of the merchandise, to defraud the revenue of the United States, or to misrepresent the facts of the case. While mere protestations of good intention, standing alone, are not a sufficient basis upon which remission of additional duties may be granted (*R. W. Gresham* v. *United States*, 27 C. C. P. A. (Customs) 106, C. A. D. 70), in the circumstances of the present case, as in others, they may serve as cumulative evidence of the petitioner's good faith.

It may be noted in passing that the advance in regular duties due to the appraiser's increased valuation of the instant merchandise amounted to only $105.15, whereas the additional duties imposed by reason of undervaluation amounted to $936.56. As is well expressed in the brief filed on behalf of petitioner, "the negligible amount of increased duties resulting from the advanced value belies intention to deceive or defraud * * *." *C. J. Tower & Sons* v. *United States*, 16 Cust. Ct. 219, Abstract 50867.

We have given careful consideration to the well-prepared brief of respondent's counsel and to the cases therein cited but do not deem the contrary views there expressed to be controlling of the peculiar circumstances of the present case.

The basis upon which remission of additional duties may be granted is set forth in section 489 of the Tariff Act of 1930 (19 U. S. C. §1489), wherein it is stated—

* * * Such additional duties shall not be construed to be penal and shall not be remitted nor payment thereof in any way avoided, except * * * *upon the finding of the United States Customs Court*, upon a petition filed * * * and *supported by satisfactory evidence* under such rules as the court may prescribe, that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise. * * * [Italics supplied.]

After carefully reviewing all the facts in the case, we find that the petition before us is "supported by satisfactory evidence" and that the entry of the merchandise at a less value than that returned upon final appraisement was without any intention to defraud the revenue of the United States or to conceal or misrepresent the facts of the case or to deceive the appraiser as to the value of the merchandise.

The petition is granted and judgment will be entered accordingly.